When you're ready, Mr. Ross. Good morning. The appellants are here today to ask this court to vacate a modified preliminary injunction entered by Judge Navarro of the District of Nevada on May 2, 2012. There are at least three reasons why this court should vacate that preliminary injunction. Was it modified? There was a modified preliminary or amended preliminary injunction was the order, yes. But you didn't appeal the original injunction. Well, that's true, we did not. The district court seems to think the original will govern even if we don't consider the amended or modified version. Well, if an order has been amended, then it's changed and the original one doesn't exist. Well, the Ninth Circuit, which you don't really cite to the fact that it's Ninth Circuit law that has to govern this, tells us that what we're supposed to look to is whether or not there was really a substantive change in the legal relationship between the parties. So use of the word amended doesn't answer the question, that we have to look beyond that. So what is the substantive legal relationship that changed? Well, we had two new parties who were enjoined by the amended injunction who were not in the original case. Well, do they have to be parties if they fall within the bounds of someone who is in active concert or participation? They were not in active concert or participation, they were a customer. They had no role in that. They never had their day in court. I'm talking, of course, about F. S. and F. and Grayson. You don't cite any case law that discusses what constitutes active concert or participation under Rule 65. Well, the Longiero case talks about the relationship of the parties, and that's exactly what we're talking about here. Well, the Supreme Court has said in the Knitwear case that the question is to what extent the purpose of the injunction, and wouldn't this warrant the purpose of the injunction if the third party could sell something that's violative of the injunction? Well, the injunction, you're talking about the original injunction, Your Honor? Yes. The original injunction was amended to include a new product, the redesigned screen protector, and to include new defendants. But didn't the original injunction include persons acting in concert or participation with the infringer, and didn't they have knowledge of the order? Weren't they subject to it? They were given notice of the order, and that's what the order said. Yes, that's correct. But they were never given a day in court. They were never given the opportunity to challenge the patent, the enforceability. What's happened here is that an injunction issues against parties who are not even aware of the lawsuit, and then they're joined in the lawsuit, and then they have no opportunity to challenge the underlying patent, which they would have had, had they been there. The question of whether they were aware of the lawsuit is very disputed, is it not? I mean, your friends on the other side say that, in fact, they notified them, not only of the lawsuit, but of the injunction itself. They notified them after the injunction had issued, and they notified them of their claim against infringement before they sued AETEC. That's true. All right. After the court ultimately entered the sanction, or awarded the sanction, against AETEC, did you all appeal the contempt order?  So there's a separate appeal pending from the contempt order? Well, it's no longer pending. We said that the court should exercise its jurisdiction and take that appeal, and the court issued an order choosing not to do that. But it's still available purposes of appeal at the end of the case? At the end of the case, yes. We can appeal that at the end of the case. That's correct. But since the finding of the original injunction, the modified injunction, we've now had a decision from the patent office that the claims are unpatentable, and I cited that as supplemental authority to the court. So, and we've notified the court about that below, and the court's not acting on it. We can't deal with that, can we? Number one, it's potentially appealable, and it isn't a record here, except to the extent you've given us that simple fact. I think you can recognize that, Your Honor, because this is a preliminary injunction. The standard is likelihood of success on the merits. And where the patent officer said all the claims are unpatentable, there's no likelihood of success on the merits. But that's validity, right? Was validity considered here? The court, in the original injunction hearing, AETAC did not appear. So then we filed a motion to modify. The judge says, you should have been here sooner. We're not going to look at validity. Then they filed a motion for, they add S&F and Gradeshield to the case, and S&F, in the contempt citation, says, take a look at validity and enforceability. And the judge says, no, not going to do that. Lack of jurisdiction, right? The contempt is dismissed for lack of jurisdiction? You mean the appeal from the contempt? Yes. Well, it was dismissed because the court chose not to accept pendent jurisdiction over it. Our contention was that these are so related that this court should deal with them all together. And the court decided not to. But the point is that S&F and Gradeshield have never had an opportunity in these proceedings to test the validity of the patent, and yet they're enjoined from making a product. Well, they had an opportunity. They just didn't do it. No, they didn't have an opportunity. Well, you say they're enjoined from making a product. The people who make the product had an opportunity, and they chose not to appear. That's AE10, correct. But S&F and Gradeshield did not have an opportunity to participate in those original proceedings. They were not given notice of the complaint. Well, what difference does it make if they're enjoined? Because your product, you can't make it, you can't ship it. I mean, how could they ever sell anything if AE10 is enjoined? Well, there are certainly other opportunities to get these products made. There are a number of manufacturers who make these kinds of products. They should have the opportunity to challenge the patent. And they weren't given that opportunity in this case. Well, the case is still ongoing, right? I assume they've got the opportunity in the underlying merit section, correct? Yes, they will eventually, assuming the judge, at some point, looks at validity and enforceability in this case, or the jury does. Has the case not moved forward at all? Oh, we have a close of discovery, yes. The case is moving forward. Has there been a Markman hearing? Yes, there was a claim construction hearing, and the judge issued a decision, and she elected not to construe the term continuously. What the judge has done here in finding infringement under the Doctrine of Equivalence is to read that limitation out of the claim. Well, what the judge did was just say that, on likelihood of success on the merit, I mean, she hasn't found the underlying infringement yet, right? No, that's not correct. In her opinion, on the issue of... On the sanctions. Sanctions issue, where she looked at the... She says enclosed is not airtight, and that seems to be supported by the spec, doesn't it? Enclosed is not airtight. The point is continuously surrounded, and continuous means continuous. It's like majority. And yet the specification itself recognizes that there are embodiments that don't have a completely airtight compartment. No, the specification speaks about having spacers at the top. For the buttons, yes, for the buttons, among other things, and it also says you can have adhesive only on a portion of the perimeter, which again tells you that there must be spacing. So there's at least two specification references to continuously, which is not airtight. Continuous means... That's getting into the merits, which we don't even really have to reach, do we? Well, this is a claim construction issue. We're not talking about the merits. We're talking about the interpretation of the claim. Yes, and you said that we're somehow throwing out a limitation, and we're just pointing out that there's no limitations being ignored by the district court. The district court seems to have a very good grasp of what's at stake here. No, no, I respectfully disagree, Your Honor. When a patentee writes a claim that says continuously surrounded, and they could have said surrounded, and they'd have a disclosure that's not continuous, then they cannot get the Doctrine of Equivalence to apply here. Thank you. I think I reserve the rest of my time for a moment. We're hearing from Mr. Johnson first. That's right, Your Honor. Thank you. I'll be addressing jurisdiction. Mr. Block will be addressing the merits. And I'd like to begin by emphasizing what's not before the court. Defendants tend to speak of the two May 2, 2012, orders together as though they're one order. But as the motions panel noted in dismissing their second appeal, contempt orders are not properly appealable until the end of the case. In the first ten pages of the joint appendix, the May 2 order on contempt does just that, as a finding of contempt. Defendants are not challenging the amended injunction's colorable imitation language. So what does that leave? It leaves the language you'll find on pages 11 and 12 of the appendix, which amends the injunction to add the redesigned screen protector. The problem is, even if you view that as a modification, and we think it's better viewed as simply enforcing the original injunction, vacating that language will not change anything. Because the district court found that the amended, excuse me, the redesigned screen protector, selling or distributing that violates the original injunction. That's very clear. How do you deal with the fact, though, that the injunction adds two new parties, covers two new entities? Your Honor, they are the proponents of appellate jurisdiction. They have not argued that adding the defendants has any substantive effect on what will happen in the real world. They have simply argued that the change in the amended injunction, that they say modifies it by prohibiting sales of the redesigned touchscreen protector, is the change. No, they have argued that adding two new defendants moves it into a modification or an amendment to an injunction, as opposed to simply a clarification of an injunction. Well, but the original injunction specifically refers to those acting in concert or participation with the defendants. And if you look carefully at the difference between the original injunction and the May 2nd injunction, you'll see that that is just a description of the parties. The operative... Also, the briefing on this was terrible, I have to say, on this issue on both sides, because you don't cite anything that tells us what concert or participation would mean vis-à-vis an independent retailer. You don't argue that there is some other type of relationship between the parties. You don't say that there's joint ownership. You don't say that there was a contractual relationship that you can identify. You simply just say, well, because they were selling, we ought to assume they were in active concert or participation. There are a couple of reasons for that, Your Honor. First of all, they're acting in privity with them. They sell AE Tech's products. That's all they've ever asked to do. In addition, because the defendants filed their opening brief, before this court ruled on... Well, before Judge Reyna issued the February 1 order on the issue of jurisdiction, that sort of affected how the briefing unfolded. Now, we'd be happy to provide additional briefing for the court. This court's decision in In Recycled Benzaprene, which is not discussed in the briefs, on February 1, deals with a situation where you have an original injunction that deals with those acting in concert or participation with the defendants. And then they're added by name in the amended injunction. And the court says that is an interpretation of the original order. What about the fact that the court, the district court in this case, issued an order refusing to sanction the two new defendants on the theory that they weren't original parties and thus didn't fall within the bounds of Rule 65? Well, that was a basis for not imposing sanctions. But it wasn't... The contempt order applied to all of them. We think the order is clear that because they were acting in concert or participation, by selling AE Tech's products, it's very simple. They're the distributors of the products. I understand that, but she starts by citing the scope of Rule 65, which is the identical language of acts of concert and participation, and then says... I mean, she sort of then just leaps to the conclusion, so I can't sanction them. But doesn't it imply that she thought they didn't fall within the bounds of Rule 65? I think it underscores why there's probably some things that can still be sorted out, and that there's no jurisdiction over this interlocutory appeal. The April 26th order dismissed my friend Mr. Alsted's appeal of the sanctions order on the basis that... Citing Integris, which is another relevant precedent discussed in the jurisdictional briefing, on the basis that there's no jurisdiction over the contempt portion of this case. So that's off the table. Now, what if a defendant in general redesigns after a preliminary injunction issues? How do they get before us? Well, that depends on the scope... If there's no contempt jurisdiction, how do they get before us? If, in fact, the change in an injunction is a substantive modification that changes the scope of its reach, then they can appeal under 1292A. Well, but I didn't include that in my hypothetical. I just said they've redesigned after the preliminary injunction. Well, then they can do... They have to do one of two things, don't they? They have to request a modification of the injunction, which gives them jurisdiction, or they have to move to dissolve that preliminary injunction, either one of which would give them jurisdiction, neither of which occurred here, right? I agree that neither occurred here. Whether moving to dissolve the injunction would support jurisdiction is not entirely clear. Certainly, that would be a step in the right direction. But the courts take, this court, the Ninth Circuit, all of the courts take a substantive view of what a modification is. And if there's not actually a substantive difference in what's prohibited, then that's not viewed as a modification for purposes of 1292A. Thank you, Mr. Johnson. Let's hear from Mr. Bloch. Thank you, Your Honor. Thank you, Your Honor. Please, the Court, David Bloch. I'll be addressing the merits. We appreciate you letting us split up argument like that, since I think Mr. Johnson understands these jurisdictional issues a little bit better than I do. Before I launch into my spiel, I did want to clarify something that was said by the defendants. In point of fact, the S&F and Great Shield entities were notified of the preliminary injunction on February 3rd of 2012. That's in the appendix at A189-191, so that is out of record here before the Court. They knew about this months in advance. And in addition, I'd like to address this idea that they didn't have their day in Court, which is factually incorrect. In point of fact, their brief, which is not in the appendix,  discusses the arguments about validity and enforceability at length. And then in the oral argument that took place in April, you will see the argument at A104, where the defendant says, Your Honor, to Judge Navarro, you must in fact look at invalidity and enforceability if you are going to rule on this contempt order, this contempt motion. And indeed, the Court talks about, although not at length, but the Court below does talk at pages A11 and A12 of the amended injunction, that she is not merely relying on what took place in January when AE Tech did not appear, but is also relying on what took place in April at the hearing and on the brief submitted there. So it is not the case that S&F and Great Shield did not have their day in Court. And in point of fact, since they haven't been held liable for the million dollars in sanctions that's ultimately imposed, I'm not sure why S&F and Great Shield's interests are particularly offended here. But there's nothing that they could sell, right? They cannot sell either the original or redesigned product sold by AE Tech. That is correct. That is what they've been barred from doing. They couldn't do that back in January because AE Tech couldn't sell it to them. And they couldn't do it in February when they found out about the injunction because they had already been enjoined. And yet they did it anyway. Do we know if there's any unsold inventory that the retailers still have? My understanding is that S&F and or Great Shield has some of the AE Tech equipment or the AE Tech product still in inventory. The original product or the redesigned product? The facts suggest that they sent back 8,000 units of the original to be redesigned and then they have some inventory of the redesigned product sitting in Minnesota somewhere. But of course they couldn't sell that based on the injunction whether or not they were parties. Because those products have been enjoined. And certainly if they're holding someone else's products in their warehouse, the injunction applies to them. It's hard to imagine how S&F would be allowed to sell a product that a court has already held to violate a preliminary injunction. So they are no different than anyone else. And they were absolutely notified of the existence of the injunction and of its scope. Importantly, the appeal here to the extent we reach the merits at all is quite narrow. The defendants in Docket 16 say that they are only appealing, quote, the fact that the district court modified, again we would say amended, the preliminary injunction to enjoin the sale of the redesigned screen protector. We don't even think that's quite right. Because in point of fact, if you look at A1 to A10, what actually happened is that the district court felt, held, that the redesigned product violated the original injunction. The injunction that AETEC did not oppose and is deemed by the Northern District withdrawal by District of Nevada rules to have consented to. Because there weren't sufficient, there were not more than colorable differences? Precisely, precisely, Your Honor. Because the difference between the redesigned and the original product is so, forgive me, but it's utterly trivial. And the court makes that very, very clear. What's the difference? The zigzag pattern? That is the only distinction. You can see a picture of it on page 16 of our brief. And alas, it doesn't really do it justice. I know that the court declined to take a look at the samples. If you want to change your mind, we do have some here. We can take them down to the clerk's office. But in the absence of that, I think it's important to look at how Judge Navarro reacted when she physically saw these products. Why didn't you prop her up the samples that were actually submitted to the district court? That's what she made a part of the record. You're correct. And that was simply an error on our part. We assumed that since those were part of the district court record, they would want to keep them. And so I thought I'd bring some different ones instead. They are identical, of course. There are hundreds of each. But that was simply a procedural error on my part, for which I apologize. This is a matter of clarification. One can submit to the clerk's office samples that were in evidence. And most of us regard that as quite useful. Bringing big charts to the courtroom is quite a different story. Understood, Your Honor. And again, that's entirely my fault. I had thought that instead of bringing the actual materials that were of record in the court below, I would bring additional samples of the same thing. By the way, that's just about as unwise as trying to separate your argument. I apologize for that. Please go ahead. In any event, in the absence of this court actually looking at the physical products, we should look at what Judge Navarro said about them when she was physically inspecting them. And so if I can direct you to pages 72 and 73. Originally, Judge Navarro thought that this channel actually sort of bisected the product, sort of cut it in two. But here's what she says. I do see the channel, space, gap, whatever we call it. And it is definitely an S or double S, whatever you call that, the design of it. Or you can hardly even tell that there is a space there. I have to actually touch my finger on it to see that there is a space. And I do have my ID card here. It does appear that that's the width of the spacer. It's the same as my ID card's width. I was thinking it was a little bit more when I was saying that if I was to pull it off, I would pull it off in two different pieces. It's not even that significant. You couldn't even pull it off. It's just really an imprint on the back of the screen that's just barely raised all the way around except for where the channel is. And the channel is more of an imprint or a divot, if you will. She goes on to sort of... And given that, I was kind of surprised and I assume that you all took her down this road, but I was kind of surprised at the DOE discussion. I mean, she really makes sort of fairly specific findings that it's still continuous despite this supposed channel and makes pretty specific findings that the written description discloses non-continuous channels in any event. So why aren't we talking about direct infringement instead of DOE? Your Honor, I'd hesitate to interpret why the judge decided to rule the way she did. I think, it's my sense that the court felt that it could have gone in both directions and went with the one that was easier. The one that was most defensible. If you want to argue over whether this is truly continuous or not, that seems to be angels on the heads of pins to the court. Even if it's not directly literally infringing, it's infringing under the doctrine of equivalence. And you really see that again if you go to page 91. The court, when looking at the briefs, had sort of thought this was maybe analogous to a road with a bridge. The bridge has actually fallen into a chasm, something like that. And she says, no. You know, when I actually look at the diagram that was previously provided and the fact that it was one millimeter, and that's what caught my eye, because I wanted to make sure I understood what one millimeter was, then I thought in my head, well, maybe this isn't so much like a bridge that's gone. It's more like maybe a crack in the road. And it still is, for all purposes, continuous in the sense that the functionality has not changed. The road is still the road. It doesn't require the bridge to be there. It's just a crack in the road. And I think what the court's doing there is saying that, you know, yes, I acknowledge that there is this tiny little one millimeter curved channel. It's there. I'm not saying that it's utterly trivial. It serves no function. All it is is sort of a clever effort on a graver tank to come up with some tiny, insignificant modification to escape the other side's interpretation of the claims. The last point I'd like to make before I cede the floor to Mr. Allstead again is that the standard of review here is quite deferential to the district court. This is just a preliminary injunction. There is a mark and order now. There will be a trial on the merits in January. And at that point the court will have the opportunity to review the issues of law de novo the way the court normally does. But on a preliminary injunction, the court defers to a very substantial effect, to a very substantial extent, pardon me, to the court below its determination on factual issues. So this is not a de novo review here. This is a review where there's substantial discretion to the court, even if you don't agree with how the court interpreted continuously surrounding or enclosed airspace. The law here, quoting the Celsus-Cells Direct case, this court reviews the district court's decision to grant a preliminary injunction for abuse of discretion. To constitute an abuse of discretion, a district court must either make a clear error of judgment in weighing relevant factors or exercise discretion based upon an error of law. I don't think either of those are conceivable here. Clearly the court made a careful review of the record. She looked at the product themselves and she concluded that there was a likelihood that we would succeed on the merits. And that is a decision at this point that's entitled to substantial deference by this court. I thank you very much for the opportunity. And I do apologize for... Thank you, Mr. Blanc. Thank you. Mr. Alstead. Mr. Alstead, before you get into the points you want to make, let me just ask you, how do you differentiate this case from in-rate psychobenzaprine? That case is not familiar to me. I haven't seen it. It wasn't cited in the briefs. But the point simply here is that this district court, as you noted, did not award sanctions against S&F and Gradesheep. She realized that they didn't have an opportunity before her. And that's not what happened. They did not have an opportunity to challenge this patent. And they did not have an opportunity if you say, well, they made a presentation at the contempt citation, and that was their opportunity. Well, if that was the review, then Judge Navarro had the obligation to make findings to support the injunction. Is there a difference between saying that I'm not going to sanction them and saying I don't think they were covered by the original injunction? You could still find that in your discretion it's not appropriate to sanction someone without also concluding that they wouldn't have been bound by the original injunction. Well, I think the case law was quite clear that we presented that where the party S&F and Gradesheep did not have an opportunity at the original hearing in the injunction, you couldn't sanction them for violating an injunction that they had no parts of. And it wasn't really discretion. I think that was required by the law. Here, though, if in fact you look at the sanctions hearing as the opportunity for their day in court, then Judge Navarro should have made fact findings with respect to the evidence presented. And she didn't do that. The only evidence on equivalence that's in the record is a declaration of Mr. Lu, who said it's not, it doesn't function the same way, it doesn't produce the same result. That's all that was there, and she ignored that. It didn't form an enclosed airspace, according to the record, the testimony that's before the court, and she ignored that. Now, you asked about... It would have been much easier if you would have challenged the original preliminary injunction in a timely fashion. SNF and Greyfield were not part of the case. Understood. And they, of course, should have, as we discussed earlier, have moved to either dissolve the preliminary injunction or to modify it to exclude them. Then they'd be in a stronger position. But sticking with the original question, isn't a lot of the problem here failure to contest the original preliminary injunction? Well, the failure of AE Tech to contest the original preliminary injunction, SNF wasn't a part of the case at that time. We just went over, they should have then, they had two things they could have done, neither one of which they did. They could have intervened in the case and moved to modify the injunction. They could have done that. But they did not. I don't think they were required to do that. I think once they were sued, which happened at the time of the sanctions order, then they should have been given the opportunity to present their case, which they were not. They should have. Judge Navarro had an obligation to make fact findings with respect to validity, infringement, enforceability. When she made the findment on infringement, she concluded doctrine of equivalence. You don't get there unless you conclude there's no literal infringement. She applied the doctrine incorrectly. The court should vacate the injunction for several reasons. First off, because she made no findings. Second, because the record doesn't support that she made no findings and the record is contrary to what a likelihood of success. And third, the panel has now concluded that all claims are unenforceable. So there can't be a likelihood of success.